UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

NICHOLUS OGDEN,                    )
                                   )
        Petitioner,                )
                                   )
    v.                             )    Case No. 07-4020
                                   )
DONALD HULICK, Warden,             )
                                   )
        Respondent.                )

## O R D E R

Now before the Court is Petitioner, Nicholus Ogden's ("Ogden"), Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the Petition [#1] is DENIED.

### FACTUAL BACKGROUND

Ogden was charged with killing the infant daughter of his girlfriend, Laura Lesley, in the Circuit Court of Rock Island County, Illinois. Following a bench trial, Ogden was found guilty of first degree murder. He was sentenced to a term of natural life imprisonment. On appeal, he contended that he must be resentenced because his sentence was imposed under a statute that had been found to violate Illinois' single subject rule. The Illinois Appellate Court vacated his sentence and remanded for resentencing. On November 14, 2003, Ogden was resentenced to a 60 year term of imprisonment.

Ogden filed a post-conviction petition in the trial court, in which he argued that: (1) he was denied a fair trial when the judge failed to recuse himself on the grounds that he had a "very special and extremely personal" relationship with Laura Lesley's father and

grandfather and was therefore biased, and (2) counsel was ineffective for failing to move for the trial judge's recusal.[1] The following evidence was presented at an evidentiary hearing on Ogden's post-conviction petition:

> Petitioner testified that Attorney Donovan Robertson had represented him at his bench trial before Judge Teros. Laura Lesley had been petitioner's girlfriend and was also the mother of his child. After the trial, petitioner became aware that Judge Teros had a personal relationship with Laura Lesley's grandfather, Richard Lesley, and had gone through basic training with Laura's father, Larry Lesley. Petitioner stated that he would never have taken a bench trial before Judge Teros is he had known about that relationship. When he finally talked to his attorney about it after trial, Robertson told him that he could not go against Judge Teros because he had to work in Rock Island.
>
> At the request of [Petitioner's appointed] counsel, the court took judicial notice of a report of proceedings in *People v. Laura Lesley* on November 28, 2000. On that date, Laura Lesley pled guilty before Judge Teros to the involuntary manslaughter of Nicole Lesley Krakilow. At the outset of the plea hearing [for Laura Lesley], it was noted that petitioner's postconviction petition was pending in which he alleged that Judge Teros should have recused himself from petitioner's case because of his relationship with Laura Lesley's grandfather. Judge Teros stated that he had become aware that he knew Ms. Lesley's grandfather before petitioner's trial had started and that he then made that disclosure to petitioner.[2] Judge Teros also had been in basic training with Ms. Lesley's father, Larry Lesley. The judge stated that he had not been "great social friends with either" Richard or Larry Lesley, although he had seen Richard Lesley and had a beer

---

[1] There is some reference in the record to Petitioner having asserted a claim of ineffective assistance of counsel in his post-conviction petition. However, having reviewed the post-conviction petition, supplement to post-conviction petition, and Finley brief of appellate counsel, the Court does not find any such claim reflected in the documents. As set forth later in this Order, whether this claim was actually presented in the post-conviction petition has no impact on the outcome of this petition.

[2] There is some indication in the record that Richard Lesley died in the late 1980s.

with him in various establishments over the course of time. Judge Teros did not think there was any conflict of interest, but was willing to recuse himself if either Ms. Lesley or the State's Attorney felt uncomfortable with the matter. Ms. Lesley waived any potential conflict and proceeded to plead guilty.

Morrie Unterscheidt testified for the State that he was a bailiff for the Rock Island County Sheriff's Department, that he was frequently a bailiff for Judge Teros and that he had been the bailiff during petitioner's case. Sometime before the trial, Unterscheidt found out that Richard Lesley was the great-grandfather of the victim in the petitioner's case. Unterscheidt told Judge Teros about it in chambers. Judge Teros informed the attorneys, Robertson and Assistant State's Attorney Ishibashi, and petitioner about it in the courtroom, and they were satisfied with Judge Teros presiding over the case. Unterscheidt stated that there would have been a court reporter present. He also testified that he believed that Richard Lesley had died in the late 1980's.

Donovan Robertson testified for the State that he represented petitioner at trial. He recalled that Judge Teros had disclosed that he knew one of the victim's family members. Robertson discussed the matter with petitioner who agreed that he did not want to substitute Judge Teros. Robertson believed that a court reporter had been present, but he did not know if a record had been made of the disclosure. Robertson further stated that he did not believe that Judge Teros had been biased in petitioner's case.

Diane Slach, petitioner's mother, was called as a rebuttal witness on behalf of petitioner. She stated that she had been in the courtroom every time petitioner was and she never heard any discussion between the attorneys and Judge Teros regarding any relationship [between] the judge and the Lesleys. She had been aware of the relationship shortly after petitioner was to be sentenced. She talked to Robertson's secretary about the matter, but she never received a call back from Robertson.

Following an evidentiary hearing, the trial court denied the petition on July 22, 2003, finding that, despite the lack of any transcript documenting the conversation, any relationship with

the victim's family had been disclosed prior to trial and that his trial attorney's decision not to seek the Judge's recusal was a matter of strategy.

Ogden filed an appeal, but on March 31, 2005, his appellate counsel filed a motion for leave to withdraw under Pennsylvania v. Finley, 481 U.S. 551 (1987). Counsel's Finley brief noted that issues of credibility are the province of the trier of fact and that counsel could not hope to convince the appellate court that the trial court had erred in its findings. On August 11, 2005, the Illinois Appellate Court granted counsel's motion to withdraw and affirmed the post-conviction court's judgment. In so doing, the court noted that "the postconviction petition was properly dismissed and that there are no arguable errors to be considered on appeal. We further find that to continue with this appeal would not possibly result in success and would be wholly frivolous."

Ogden filed a petition for leave to appeal ("PLA") to the Illinois Supreme Court in which he argued: (1) the trial judge had a mandatory duty to recuse himself under Illinois Supreme Court Rule 63(D), and (2) trial counsel was ineffective for failing to inform petitioner of the trial judge's conflict. The request for PLA was denied.

Ogden then filed the present petition pursuant to 28 U.S.C. § 2254, in which he raises essentially two issues: (1) he was denied a fair trial because the trial judge who presided over his trial was a close friend of the alleged victim's family, and (2) trial counsel was ineffective for failing to move to have the trial judge recuse himself. The matter is now fully briefed, and this Order follows.

**DISCUSSION**

I.  Fair Trial Claim

Before reaching the merits of a petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254, a district court must consider "whether the petitioner exhausted all available state remedies and whether the petitioner raised all his federal claims during the course of the state proceedings." Farrell v. Lane, 939 F.2d 409, 410 (7th Cir. 1991), *quoting* Henderson v. Thieret, 859 F.2d 492, 496 (7th Cir. 1988). If the answer to either of these questions is "no," then the failure to exhaust state remedies or procedural default bars the petition. Id. In other words, if a petitioner fails to give the state courts a full and fair opportunity to review his claims, then his petition must fail. Bocian v. Godinez, 101 F.3d 465, 468-69 (7th Cir. 1996).

Exhaustion of a federal claim occurs when it has been presented to the highest state court for a ruling on the merits or when it could not be brought in state court because a remedy no longer exists when the federal petition is filed. Id. In the present case, Respondent does not argue that Petitioner has failed to exhaust his state remedies.

Procedural default occurs when a claim could have been but was not presented to the state court and cannot, at the time the federal petition is filed, be presented to the state court. Resnover v. Pearson, 965 F.2d 1453, 1458 (7th Cir. 1992). This occurs in one of two ways. First, a procedural default may occur when a petitioner fails to pursue each appeal required by state law, Jenkins v. Gramley, 8 F.3d 505, 507-08 (7th Cir. 1993), or when he did not assert the claim raised in the federal habeas petition in the state court system. Resnover, 965 F.2d at 1458-59. The second way in which a petitioner may procedurally default a claim is when a state court disposes of the case on an independent and adequate

state law ground, regardless of whether that ground is substantive or procedural. Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 2553-55 (1991).

Federal review is barred for claims that are procedurally defaulted unless the petitioner can demonstrate cause and prejudice. Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 1572-73 (1982); Farrell, 939 F.2d at 411. Review in federal court is also possible if a fundamental miscarriage of justice would otherwise occur in that a constitutional error probably resulted in the conviction of someone who is actually innocent. Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 864-67 (1995).

Here, the State contends that Ogden's first claim is procedurally defaulted because it was not presented to the appellate or state supreme court as a federal constitutional claim. It is well-settled that a state habeas petitioner must afford the state courts a fair opportunity to apply constitutional principles to correct any constitutional error that occurred during the state court proceedings. Bocian v. Godinez, 101 F.3d 465, 469 (7th Cir. 1996); Baldwin v. Reese, 541 U.S. 27, 29-32 (2004) (holding that in order to fairly present and preserve a claim for federal review, a petitioner must alert the state court to the federal nature of the claim by citing the source of the federal law on which he relies, a case deciding a similar claim on federal grounds, or at least labeling the claim "federal"); *see also*, Anderson v Benik, 471 F.3d 811, 814 (7th Cir. 2006).

"To this end, a habeas petitioner must present his claims in such a way as to 'fairly alert the state court to any applicable [federal] constitutional grounds for the claim." Id., *citing* Green v. Peters, 36 F.3d 602, 605 (7th Cir. 1994). In other words, a petitioner must submit both the operative facts and controlling legal principles of any federal constitutional claim to the state court. Bocian, 101 F.3d at 469.

The Seventh Circuit's test for determining whether a petitioner has met these requirements is as follows:

> If the petitioner's argument to the state court did not: (1) rely on pertinent federal cases employing constitutional analysis; (2) rely on state cases applying constitutional analysis to a similar factual situation; (3) assert the claim in terms so particular as to call to mind a specific constitutional right; or (4) allege a pattern of facts that is well within the mainstream of constitutional litigation, then this court will not consider the state courts to have had a fair opportunity to consider the claim. However, the presence of any one of these factors, particularly factors (1) and (2), does not automatically avoid a waiver; the court must consider the specific facts of each case.

Id., *quoting* Verdin, 972 F.2d at 1473-74.

Regarding the first element, Ogden first raised the claim that Judge Teros should have recused himself in his post-conviction petition, stating that he was denied his Fourteenth Amendment right to a fair trial. He cited no law or precedent in support of his claim. However, when presenting the claim to the Illinois Appellate Court, Ogden relied solely on state law and Illinois Supreme Court Rule 63(D), abandoning all reference to the Fourteenth Amendment. In his PLA to the Illinois Supreme Court, Ogden moved even further away from any reference to due process or the Fourteenth Amendment by framing his issue as whether recusal was mandatory pursuant to Illinois Supreme Court Rule 63(D), thereby requiring any waiver to have been incorporated into the record. At no time did he mention the Fourteenth Amendment or cite any federal cases engaging in constitutional analysis.

Similarly, he fails to satisfy the second element, as the single state case cited does not rest on the federal constitutional grounds he attempts to implicate in his present claims or otherwise attempt to apply a relevant analysis under the U.S. Constitution. In his state

court proceedings, he cited only one case on this issue, namely Woods v. Durkin, 539 N.E.2d 920 (Ill.App. 1989), a medical malpractice case that discusses the procedures that a judge must take when he is disqualified under Rule 63(D) and does not contain any federal constitutional analysis. Citing state cases based solely on state law or the state constitution will generally not be enough to alert a state reviewing court to a federal constitutional claim. Verdin, 972 F.2d at 1478. Accordingly, the Court agrees with the Government that Ogden has not satisfied the second element of Verdin.

With respect to the third element, that the petitioner assert the claim in terms so particular as to call to mind a specific constitutional right, Ogden again fails. Although Ogden stated that the trial judge should have recused himself, he relied only on the Illinois Supreme Court Rule 63(D). The Court finds that this argument as presented to the Illinois courts on review of the denial of post-conviction relief was not so specific as to call to mind any particular federal constitutional right.

Regarding the fourth element, when the petitioner has previously asserted a claim "without federal citation or other conspicuous federal emblemata," the court in Verdin found that the claim that can stand under these circumstances "is a rare bird." Verdin, 972 F.2d at 1475, *quoting* Nadworny v. Fair, 872 F.2d 1093, 1098 (1st Cir. 1989), *cert. denied*, 113 S.Ct. 1392 (1993). The claim must display "a particular idiom for, or formulation of, a federal claim" that "a local legal culture has adopted." Verdin, 972 F.2d at 1475, *quoting* Nadworny, 872 F.2d at 1098. Other statements of the standard are more lenient. A petitioner must "fairly alert[] the state court to the constitutional issue," allowing it to "remedy any constitutional deficiencies." Whipple v. Duckworth, 957 F.2d 418, 420 (7th Cir. 1992), *overruled on other grounds*, Eaglin v. Welborn, 57 F.3d 496 (7th Cir.), *cert.*

*denied*, 116 S.Ct. 421 (1995). The issue as presented by Ogden in his briefs to the Illinois Appellate Court and Illinois Supreme Court does not invoke any locally-adopted idiom known to the Court or which otherwise "present[s] the echo of a federal claim," and such a claim is not readily discernable upon examination. Verdin, 972 F.2d at 1475.

Ogden failed to cite any federal authority whatsoever in filing his appeal to the Illinois Appellate Court or PLA to the state's highest court. He cited a state court case which did not invoke federal constitutional analysis and relied on a state procedural rule as the legal basis for his claim. Accordingly, his claim that he was denied a fair trial is procedurally defaulted for failure to present his claim as a federal constitutional claim through one complete round of state review.

Procedurally defaulted claims can be reviewed by a federal court only upon a showing of cause and prejudice or a fundamental miscarriage of justice. To establish cause, a petitioner must show that some external impediment prevented him from asserting his federal claim in state court. Murray v. Carrier, 477 U.S. 478, 488 (1986). Prejudice can be established where a petitioner can show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." United States v. Frady, 456 U.S. 152, 170 (1982).

Here, Ogden makes no real attempt to demonstrate cause for failing to raise the claim as a federal constitutional claim in the state courts. Rather, he repeatedly argues that the claim was fairly presented. Nor does Ogden make any attempt to invoke the fundamental miscarriage of justice exception. To properly invoke the narrow fundamental miscarriage of justice exception, allegations of constitutional error must be supported by

new, reliable evidence that was not presented at trial. Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 865 (1995). A petitioner must then show "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Id. at 867-68; Gomez v. Jaimet, 350 F.3d 673, 679 (7th Cir. 2003). Ogden makes no showing that he is actually innocent of the charges against him and presents no new, reliable evidence which was not presented at trial. He has therefore failed to excuse his procedural default of this claim, and the claim is now barred from further consideration in this Court.

Assuming arguendo that Ogden's first claim was somehow not procedurally defaulted, he would nevertheless not be entitled to relief. With respect to claims that are not barred either for failure to exhaust or procedural default, federal courts must employ a strict analysis. A petition must be denied with respect to any claim previously adjudicated on the merits in a state court unless the decision of the state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *See also* Lindh v. Murphy, 96 F.3d 856, 868-71 (7th Cir. 1996), *rev'd on other grounds*, 521 U.S. 320, 117 S.Ct. 2059 (1997).

Subsection (d)(1) instructs that Supreme Court precedent governs legal questions. Id. at 869. In resolving mixed questions of law and fact, relief is unavailable unless "the state's decision reflects an unreasonable application of the law," meaning federal courts are to have a hands-off attitude unless the state court judgment is premised on an unreasonable error. Id. at 870 (internal quotation marks omitted). A responsible, thoughtful

decision that is made after a full opportunity to litigate suffices, "even if it is wrong." Id. at 871, 876-77. Subsection (d)(2) pertains to a decision constituting an unreasonable determination of the facts, and, according to 28 U.S.C. § 2254(e)(1), factual issues are presumed to be correctly resolved. A petitioner must rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Ogden has cited no clearly established federal law as set forth by the Supreme Court that mandates a different result or that was unreasonably applied by the state courts.[3] Rather, he contends that the state court's determination of the facts was unreasonable. In support of this contention, Ogden recites the facts that were presented to the state courts and notes inconsistencies or statements that were not supported by other evidence, such as the fact that witnesses testified that there was a court reporter present when Judge Teros disclosed the fact that he knew two of the victim's family members, yet there is no such conversation reflected in the transcript. These facts were known to the state courts at the time that they made their credibility assessments determining that the trial judge, bailiff, and Ogden's former counsel were more credible than Ogden and his mother. Ogden's argument constitutes nothing more than a disagreement with the credibility determinations of the state courts or an effort to rehash the decision

---

[3] To the extent that he notes Tumey v. Ohio, 273 U.S. 510, 532 (1927), in his traverse brief, that case is inapposite as it does not involve circumstances where the trier of fact has found that there was a proper disclosure of a potential conflict and an informed waiver of that conflict, as was found in this case by the state court after assessing the credibility of the witnesses that testified at the post-conviction evidentiary hearing. As set forth elsewhere in this Order, Ogden has failed to rebut the presumption of correctness in the state court's factual findings by clear and convincing evidence, and they must therefore be presumed to be correct for purposes of resolving the pending petition.

based on his perception of the evidence, which does not reasonably call the state court's findings into question and is simply insufficient to meet his burden under § 2254.

Ogden has done little more than ask this Court to accept his disagreement with the appellate court's decision and has failed to set forth relevant law from the Supreme Court of the United States mandating a contrary result, demonstrate an unreasonable application of clearly established Federal law, or make any real attempt to challenge the statement of fact set forth in the state court rulings by rebutting the presumption of factual correctness by clear and convincing evidence. Under the highly deferential standard applicable to claims under § 2254, state court legal and factual determinations must be given the benefit of the doubt, even if this Court might have reached a different decision if presented with the same claim independently. Woodford v. Viscotti, 537 U.S. 19, 24 (2002). His claim must therefore be denied.

II.     Ineffective Assistance

Ogden next argues that his trial counsel was ineffective for failing to file a motion requesting that Judge Teros recuse himself. However, before reaching the merits of this claim, the Court must determine whether it was fairly presented to the state courts. Although there is no question that this claim was presented in his post-conviction petition and on appeal, the substance of this claim was not presented in his PLA to the Illinois Supreme Court. An ineffective assistance of counsel claim was presented in Ogden's PLA, but he claimed that counsel was ineffective for not discussing "his options in regards to a hearing in whether or not this was a conflict which may effect the disquilification [sic] of the Judge" based on counsel's admission that he failed to properly discuss the conflict with Ogden.

As noted by Respondent, these are substantively different claims. As the Seventh Circuit noted in <u>Stevens v. McBride</u>, 489 F.3d 883, 894 (7th Cir. 2007):

> Section 2254(b)(1)(A)'s exhaustion provision "requires the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." <u>Lewis v. Sternes</u>, 390 F.3d 1019, 1025 (7th Cir.2004). Adequate presentation of a claim requires a petitioner to "present both the operative facts and the legal principles that control each claim to the state judiciary." <u>Rittenhouse v. Battles</u>, 263 F.3d 689, 695 (7th Cir.2001).

The Court of Appeals noted that although the petitioner in <u>Stevens</u> presented his ineffectiveness claim to the state courts, he never presented the specific claim being asserted in the habeas petition as a supporting argument through one complete round of state court review. <u>Id.</u> "Thus, the failure to alert the state court to a complaint about one aspect of counsel's assistance will lead to a procedural default." <u>Id.</u>

The claim asserted in the present petition challenges counsel's trial strategy in determining not to seek the recusal of Judge Teros and appointment of a new judge for trial. The claim presented in the PLA challenges the quality of counsel's communications with his client. Accordingly, under <u>Stevens</u> and the other well-established Seventh Circuit case law, Ogden failed to fairly present his ineffective assistance claim through one complete round of state court review, and he is therefore barred from doing so here.

Even assuming that Ogden was not barred from pursuing this claim in his § 2254 petition, his claim would not entitle him to relief on the merits. The seminal case on ineffective assistance of counsel is <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). In <u>Strickland</u>, the Court stated that in order for a prisoner to demonstrate that counsel's performance fell below the constitutional standard, the petitioner would have to show that

"counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88. A prisoner must also prove that he has been prejudiced by his counsel's representation by showing "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The courts, however, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 690; Woods v. McBride, 430 F.3d 813, 821 (7th Cir. 2005).

As set forth previously in discussing Ogden's fair trial claim, following an evidentiary hearing, the trial court made a specific findings.

> The court after hearing and weighing all the evidence is going to find after reviewing the transcripts that the Honorable Judge James T. Teros did not act with any bias or prejudice towards the defendant in the proceedings. I also find that the Honorable Judge James T. Teros also disclosed to the parties the – his relationship with the alleged victim's grandfather, uncle. The court finds that attorney Donovan Robertson and the defendant through trial strategy decided not to recuse or ask the judge not to recuse himself. . . .The court is going to find it was not ineffective assistance of counsel, it was trial strategy.

(Transcript of 7/22/03 proceedings at R000388-R000389). Thus, the state court made express factual and credibility findings that the judge's relationship had been disclosed to Ogden, that Ogden and his counsel had made a strategic decision not to seek the judge's recusal, and that the judge did not act with any bias or prejudice against him. The further finding that counsel did not provide ineffective assistance clearly included a credibility determination that credited counsel's testimony that they had discussed the judge's disclosure and decided against seeking a recusal over Ogden's testimony to the contrary.

When reviewing a state court's decision regarding a claim of ineffective assistance of counsel, federal courts "must presume all factual determinations made by the state courts, including credibility determinations, are correct, unless rebutted by clear and convincing evidence." Murrell v. Frank, 332 F.3d 1102, 1112 (7th Cir. 2003).  Ogden has offered nothing more than a reiteration of the evidence that was presented during the evidentiary hearing and his bald disagreement with the findings that resulted from that hearing.  He has therefore failed to rebut the presumption of factual correctness by clear and convincing evidence.  As he has not demonstrated either that counsel's performance was deficient or that he suffered prejudice therefrom, he is not entitled to relief in this federal habeas proceeding.

## CONCLUSION

For the reasons set forth herein, Ogden's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 [#1] is DENIED.  This matter is now terminated.

ENTERED this 18th day of April, 2008.

                                                           s/ Michael M. Mihm
                                                           Michael M. Mihm
                                                           United States District Judge